RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE __12/8/06__
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| STEVEN M. HUNTER | CIVIL ACTION NO. 06-1745 |
| VS. | SECTION P |
| UNITED STATES PAROLE COMMISSION | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus (42 U.S.C. §2241) filed *in forma pauperis* by *pro se* petitioner Steven M. Hunter on October 6, 2006. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP); he is incarcerated at the United States Penitentiary, Pollock, Louisiana, (USPP) where he is serving the 10-31 year sentence imposed by the District of Columbia Superior Court in 1996 following petitioner's convictions for first degree burglary, aggravated assault and assault with a dangerous weapon. He complains that the United States Parole Commission's amended rules are a "disadvantage" to him and that these retroactive rules violate the *ex post facto* clause of the United States Constitution.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be DENIED

and **DISMISSED WITH PREJUDICE**.

### *Statement of the Case*

On February 1, 1996 petitioner was convicted of first degree burglary, aggravated assault, and assault with a dangerous weapon in the Superior Court for the District of Columbia; he was sentenced to serve not less than 10 nor more than 31 years in prison and was committed to the custody of the BOP for that purpose. His conviction was affirmed in an unpublished opinion of the District of Columbia's Court of Appeal in the matter entitled Hunter v. United States, No. 96-CF-29 (D.C. May 12, 1999). His subsequent application for *certiorari* was denied by the United States Supreme Court on October 2, 2000. Hunter v. United States, 531 U.S. 863, 121 S.Ct. 154, 148 L.Ed.2d 103 (2000).

On some unspecified date petitioner was convicted of assaulting a corrections officer in a prison disciplinary hearing at some unspecified penitentiary. On some unspecified date the United States Parole Commission, in accordance with its regulations, "... added 12 -18 additional months to petitioner's guidelines for ... prison disciplinary infraction..."

### *Petitioner's Claims for Relief*

Petitioner's pro se pleading is difficult to decipher. His hand-written addendum to his petition sets out the following Grounds for Relief and Supporting Facts:

1. The USPC amended parole rules and guidelines of the

District of Columbia's "Old Parole Board". According to petitioner, this amended was unconstitutional and a violation of the prohibition against ex post facto laws. The current USPC guidelines are retrospective in nature and create a "disadvantage" because they "impose a different punishment than was articulated." [doc. 1-1, p. 5]

2. The USPC application or enactment changed the legal consequences of the act completed before its effective date. [id.]

3. The USPC is using Guidelines in violation of prior federal law and is an *ex post facto* law. The USPC's guidelines are also a Bill of Attainder and thus not authorized by the Constitution. [id.]

4. The USPC's application of the amended guidelines to petitioner's case was an abuse of discretion and was arbitrary, capricious, prejudicial, illegal, and unwarranted. [id.]

5. The USPC's application of its "severity rating" to petitioner's prior disciplinary infractions was retrospective in nature. Petitioner claims that under the old law, there was a "... reasonable probability that the old D.C. Parole Board Rules would not have considered the prior disciplinary infraction as a new criminal charge..." [id., p. 6]

6. The USPC's application of its amended guidelines has caused petitioner to serve from 12-18 additional months in prison

before petitioner will be granted parole. [*id.*, p. 6]

7. The USPC's consideration of the disciplinary conviction increased petitioner's quantum of punishment and thus violates the constitutional prohibition against ex post facto laws. [*id.*, p. 6]

8. The USPC's application of these guidelines was illegal and violated the prohibition against ex post facto laws. [*id.*, p. 7]

9. The USPC denied petitioner equal protection and treated petitioner differently from other District of Columbia convicts when they allowed an Associate Warden from Federal Corrections Institute, Beckley to sit in on the initial parole hearing. [*id.*, p. 7]

10. The USPC improperly considered a telephone conversation between petitioner and his mother. Petitioner was not informed of the existence of this evidence and he did not give his permission for its use. [*id.*, p. 7]

11. The USPC treated petitioner differently from other District of Columbia prisoners when it failed to consider all of petitioner's Superior Program Achievement awards. The USPC considered only 16 out of a total of 50 such awards. [*id.*, p. 7]

12. The USPC erred when it refused to grant petitioner a reconsideration hearing. [*id.*, p. 8]

13. The USPC abused its authority and otherwise arbitrarily

and capriciously denied petitioner parole which had been recommended by the initial hearing examiner. [*id.*, p. 8]

### Law and Analysis

In 1997, Congress passed the National Capital Revitalization and Self-Government Improvement Act, Pub.L. 105-33, 111 Stat. 745 ("the Act") which was ultimately codified at D.C.Code § 24-131(a)(2). Among other things, the Act provided that after August, 1998, sole authority over all parole release decisions regarding District of Columbia felony offenders would lie with the USPC.

It is well settled that the Constitution does not create a liberty interest in parole. A liberty interest in parole may, however, be created by state law. <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 7-8, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The District of Columbia's parole scheme does not create a liberty interest in parole. <u>Ellis v. District of Columbia</u>, 84 F.3d 1413, 1420 (D.C. Cir. 1996).[1]

The Act recognizes that the USPC is authorized to "amend and supplement" the District's parole regulations. D.C.Code § 24-131(a)(1). By virtue of this authority, the USPC supplemented

---

[1] "Since both our own and the D.C. Court of Appeals's reading of the District's regulations indicate that parole is never 'required after the Board determines that the necessary prerequisites exist' [citation omitted] and that a prisoner's low total point score does not 'compel[] the Board to grant a prisoner release' [citation omitted], <u>we hold that the regulations do not give any prisoners a liberty interest in parole.</u>" *Ellis*, 84 F.3d at 1420 (emphasis supplied).

the District's regulations by incorporating a new guideline system. It is this system and its implementation that petitioner apparently attacks.

His claim that the system employed is violative of the *Ex Post Facto* Clause is without any basis in fact or law. In order to establish such a violation, petitioner must show that the guidelines themselves "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). His ability to make such a showing is impossible for two reasons. First, the USPC, like its predecessor, the D.C. Board of Parole, exercises broad discretion in determining whether or not to grant parole. Second, the USPC parole guidelines are not even "laws" within the meaning of the *Ex Post Facto* Clause. Sheary v. U.S. Parole Comm'n, 822 F.2d 556, 558 (5th Cir. 1987).

Since "discretion" remains the key factor in determining petitioner's parole eligibility, he cannot establish that any change in the guidelines created a risk of increased punishment so as to trigger the application of the *Ex Post Facto* Clause in his favor.

Further, in order to succeed in this challenge, petitioner would be required to show that the application of the USPC guidelines produced "...results materially harsher than those

ordinarily occurring under the prior regime." Blair-Bey v. Quick, 159 F.3d 591, 592 (D.C. Cir. 1998). He argues that under the D.C. Parole Board's guidelines, he would have become eligible for parole on a date prior to the date upon which he will become eligible under the USPC's guidelines. This is a distinction without a difference unless he can demonstrate that he would have definitely been paroled on the earlier date. The old D.C. Parole Board had the discretion to deny parole and, petitioner has not shown that this would not have happened.

Likewise, to the extent that petitioner claims that the refusal to provide him with a parole reconsideration hearing under the federal guidelines operates to deprive him of some constitutional right, that claim too must fail and for the same reasons. Unless petitioner can demonstrate the likelihood of release on the earlier date, he fails to state a claim. Based upon the pleadings such a showing is impossible.

In short, petitioner has no constitutionally protected interest in parole; the USPC is free to supplement the District of Columbia's parole regulations; the USPC thus has virtually unfettered discretion in its determinations of parole eligibility; and, the exercise of such discretion did not result in the imposition of an *ex post facto* law. See *Simmons v. Shearin*, 295 F.Supp.2d 599, 600 (U.S.D.C.Md. District 2003). Since petitioner's custody offends neither the constitution nor

laws of the United States, he is not entitled to *habeas corpus* relief.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** since it plainly appears from the face of the petition that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _8th_ day of _December_, 2006.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE