

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| STEVEN M. HUNTER | CIVIL ACTION NO. 1:06-cv-01745 |
| -vs- | JUDGE DRELL |
| U.S. PAROLE COMMISSION | MAGISTRATE JUDGE KIRK |

## R U L I N G

Pending before the Court are a number of motions filed by the petitioner, Steven M. Hunter ("Mr. Hunter"), all of which relate to his initial complaint challenging the propriety of a decision by the United States Parole Commission ("USPC") denying him parole. Because the facts and circumstances surrounding Mr. Hunter's claims have progressed to such a point that all of these matters may now be jointly ruled upon, we address them all herein. For the reasons described below, the Court rules as follows:

(1)    Mr. Hunter's Ex Post Facto Clause and Abuse of Discretion claims are **DENIED** and **DISMISSED WITH PREJUDICE**;

(2)    the magistrate judge's Report and Recommendation (Doc. 41) is **NOT ADOPTED**, as it is now **MOOT**;

(3)    Mr. Hunter's Motion for Response and Decision by the Court (Doc. 42) is **DENIED** as **MOOT**;

(4)    Mr. Hunter's Motion for Summary Judgment (Doc. 43) is **DENIED**;

(5)    Mr. Hunter's Motion Requesting a Decision as to the Ex Post Facto and Abuse of Discretion Claims (Doc. 45) is **DENIED** as **MOOT**;

(6)    Mr. Hunter's Motion Requesting the Court to Order the USPC to Explain the Facial Differences Between the Old and New Guidelines (Doc. 46) is

DENIED as **MOOT**;

(7)     Mr. Hunter's Motion for Writ of Mandamus (Doc. 102) is **DENIED**;

(8)     Mr. Hunter's Motion for Discovery (Doc. 103) is **DENIED** as **MOOT**;

(9)     Mr. Hunter's Petition for Writ of Mandamus (Doc. 104) is **DENIED**; and

(10)    Mr. Hunter's Motion for a Copy of the USPC Report (Doc. 106) is **DENIED**.

## I.     Background

Mr. Hunter was convicted of first degree burglary, assault with a dangerous weapon, and aggravated assault.  On February 1, 1996, Mr. Hunter was sentenced to imprisonment for a term of not less than ten nor more than thirty-one years.  While incarcerated, Mr. Hunter was also convicted in a disciplinary hearing of assaulting a corrections officer.  As a result of this conviction, the United States Parole Commission ("USPC") added 12 to 18 months to Mr. Hunter's parole guideline range.

On February 17, 2005, after Mr. Hunter had been incarcerated for 115 months, the USPC conducted an initial parole hearing ("2005 hearing") under parole guidelines governing D.C. offenders that were amended by the USPC in 2000.  (Doc. 101-2, Exh. B, p. 2).  The USPC examiner noted that Mr. Hunter had committed a number of disciplinary infractions while incarcerated, but that the absence of infractions on his record during the ten months prior to the hearing reflected a positive adjustment to his new institution.  (Doc. 101-2, Exh. B, pp. 2-4).  The examiner ultimately recommended that parole be denied because of Mr. Hunter's disciplinary problems, and because he had yet to serve a period of time within his

2

total guideline range, which was calculated to be 148 to 164 months.[1]

Mr. Hunter filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on October 6, 2006. (Doc. 1). In this original petition, Mr. Hunter took issue with the USPC's decision to apply the 2000 amended guidelines in making a determination as to his eligibility for parole, instead of the former D.C. Board of Parole's guidelines, which were in effect at the time that Mr. Hunter was convicted. This Court dismissed Mr. Hunter's petition on December 29, 2006, in accordance with a Report and Recommendation issued by the magistrate judge. (Doc. 7).

Mr. Hunter filed a notice of appeal on January 19, 2007. (Doc. 10). The United States Court of Appeals for the Fifth Circuit affirmed our decision in part, but remanded the case back to this Court for a determination of the following two issues: (1) whether the USPC's application of the 2000 amended parole guidelines was a violation of the Ex Post Facto Clause; and (2) whether "the USPC's application of the amended parole guidelines was an abuse of discretion, an abuse of authority, capricious, prejudicial, illegal, and unwarranted." (Doc. 19, pp. 6-7).

Following the decision by the Fifth Circuit, the USPC reopened Mr. Hunter's case and ordered that a new parole hearing be conducted pursuant to the 1987 parole guidelines and the 1991 policy guidelines in effect at the time that Mr. Hunter committed his offense. (Doc. 38-2, Exh. F, p. 16). Shortly thereafter, the magistrate judge submitted a Report and Recommendation on the two issues remanded to this

---

[1] Mr. Hunter's next regularly-scheduled parole hearing took place on July 30, 2008 ("2008 hearing"); parole was once again denied, and his next hearing was continued until July 2011. (Doc. 101-2, Exh. B, p. 9).

3

Court, suggesting that Mr. Hunter's petition be dismissed as moot. (Doc. 41).  While we agreed that the evidence reflected the USPC's decision to reopen Mr. Hunter's case, we felt it necessary, out of an abundance of caution and a desire to fully comply with the Fifth Circuit's instructions, to reserve judgment until a hearing had actually been conducted.  The Court ordered the USPC to hold Mr. Hunter's parole hearing on or before October 5, 2009.  (Doc. 52).

The USPC complied; a new parole hearing was conducted on July 27, 2009 ("2009 hearing").  (Doc. 101-1, p. 3).  At this hearing, the parole examiner reviewed Mr. Hunter's prior infractions, which included "Threats, Two Assaults, and Two Fights," as well as the infractions committed by Mr. Hunter after his 2005 hearing, which included "a Class I infraction for possession of a Weapon, Three Class II Assaults and several other Class II infractions, including Interfering with Staff, Threats, Sexual Proposal Threats and Destroying, Altering, or Damaging a Life Safety Device." (Doc. 101-2, Exh. I, p. 11).  Having conducted a thorough analysis of Mr. Hunter's history and disposition, the examiner recommended that parole be denied and reconsidered in twelve months.  (Doc. 101-2, Exh. I. P. 14).

Finally, Mr. Hunter's petition has found its way back to this Court for a determination of the two issues preserved by the appellate court's February 2009 decision.  After a careful review of the record, we must conclusively deny both of the petitioner's remaining claims.

## II.    Law and Analysis

### A.    The Ex Post Facto Clause

4

By its terms, the Ex Post Facto Clause provides that "[n]o Bill of Attainder or ex post facto law shall be passed." U.S. Const. art. I, § 9, cl. 3. The Supreme Court has held that "[o]ne function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission," and that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 249-50 (2000); accord Ca. Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995). In this case, of course, only the latter function of the clause is implicated.

In evaluating Mr. Hunter's claims, we note the critical distinction between an inmate's *eligibility* and *suitability* for parole. See Wallace v. Quarterman, 516 F.3d 351, 354-55 (5th Cir. 2008). "The Parole Commission determines a prisoner's suitability for parole, not his eligibility, for the latter is determined by the length of one's sentence." Id. at 355 (quoting Simpson v. Ortiz, 995 F.2d 606, 610 (5th Cir. 1993)). As such, discretionary decisions regarding an inmate's suitability for parole typically do not implicate the Ex Post Facto Clause, "[w]hile changes to parole eligibility could retroactively increase punishment," and thus, could implicate the clause. Wallace, 516 F.3d at 355. The decisive inquiry is whether retroactive application of the parole guidelines "created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner, 529 U.S. at 250 (quoting Morales, 514 U.S. at 509).

In this case, the standards applied during Mr. Hunter's 2005 hearing are at issue. To the extent that Mr. Hunter challenges the discretionary rules guiding the

5

USPC examiner who ultimately decided his parole (under any standard), his Ex Post Facto Clause claim must fail. The guidelines governing Mr. Hunter's general suitability for parole are simply not issues upon which relief may be premised under the Ex Post Facto Clause. See Wallace, 516 F.3d at 355 ("[C]hanges to discretionary parole guidelines do not have ex post facto implications."). Furthermore, we note that the issue is essentially moot at this juncture, given the fact that a new hearing was conducted for Mr. Hunter, with the examiner applying the pre-amendment guidelines. As such, there is no legitimate argument as to whether the USPC's initial decision lengthened the term of Mr. Hunter's imprisonment; the question is normally a hypothetical one, but in Mr. Hunter's case, he was actually granted a new hearing, considered under the guidelines that he requested, and was denied parole once again. Nonetheless, in the interests of ensuring that Mr. Hunter's claims have been fully and fairly considered, and complying with the mandates of the Fifth Circuit's remand, we will review Mr. Hunter's claims in detail.

1.    *Facial Distinctions*

First, we must consider whether there were "facial distinctions" between the two sets of parole guidelines which may have created "a significant risk of increased punishment." (Doc. 19, p. 6). Under the D.C. Parole Board's guidelines ("old guidelines"), which were still in effect when Mr. Hunter was convicted, the Board was charged with making parole decisions for inmates like Mr. Hunter who were convicted in the Superior Court for the District of Columbia. Ellis v. Dist. of Columbia, 84 F.3d 1413, 1415-16 (D.C. Cir. 1996); D.C. Mun. Regs, tit. 28, §§ 100 *et seq.* (repealed

6

2000).  These guidelines are the ones that Mr. Hunter claims should have been applied to his original parole determination, and thus, the ones that were applied at his 2009 hearing.

At his initial hearing on February 17, 2005, the USPC applied the guidelines promulgated after the passage of the National Capital Revitalization and Self-Government Improvement Act of 1997, which provided that the USPC would "assume the jurisdiction and authority of the Board of Parole of the District of Columbia," and gave the USPC the "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia."  Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (1997).  These standards ("new guidelines") replaced the former D.C. Parole Board's guidelines.

We begin our analysis with Mr. Hunter's *eligibility* for parole.  Under the old guidelines, the provision which applied most directly to parole eligibility stated that "the [D.C. Parole] Board shall be authorized to release a prisoner on parole in its discretion after he or she has served the minimum number of term or terms of the sentence imposed or after he has served one-third ( 1/3) of the term or terms for which he or she was sentenced, as the case may be."  D.C. Mun. Regs. tit. 28, § 200.1. Under the new guidelines, parole eligibility is governed principally by 28 C.F.R. § 2.73, which states, in relevant part, that "the Commission shall be authorized to release a prisoner on parole in its discretion after the prisoner has served the minimum term of the sentence imposed."  Both provisions state that the baseline for parole eligibility is the minimum term of the sentence (if one was imposed).  As such,

7

Mr. Hunter's eligibility for parole was not adversely affected by the application of the old guidelines in his original hearing.

Next, we must consider Mr. Hunter's *suitability* for parole, meaning the standards guiding the discretion of the parole examiners under each set of guidelines.  The old guidelines listed three broad guideposts for this analysis: "(a) The prisoner has observed substantially the rules of the institution; (b) There is reasonable probability that the prisoner will live and remain at liberty without violating the law; and (c) In the opinion of the Board, the release is not incompatible with the welfare of society."  D.C. Mun. Regs. tit. 28, § 200.1.  The new guidelines contain a list that is basically identical: "(1) The prisoner has substantially observed the rules of the institution; (2) There is a reasonable probability that the prisoner will live and remain at liberty without violating the law; and (3) In the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society." 28 C.F.R. § 2.73.  Clearly, no substantive differences are present here.

A systematic comparison reveals further similarities.  The old guidelines were based upon a point system, involving the parole examiner's calculation of a "Salient Factor Score" ("SFS"), which was the sum of numerical point values assigned to six categories of risk.[2]  This score could be modified by the addition or subtraction of points for various pre and post-incarceration factors; the sum would yield a "total

---

[2] These six categories were: (1) "Prior convictions and adjudications (ranging from 0-3)," (2) "Prior commitments of more than thirty days (0-2)," (3) "Age at the time of the commission of the current offense (0-2)," (4) "Recent commitment-free period (0-1)," (5) "Status of the prisoner at the time of commission of the current offense (0-1)," and (6) "History of heroin or opiate dependence (0-1)." Ellis, 84 F.3d at 1416 (quoting D.C. Mun. Regs. tit. 28, § 204.4).

8

point score," which was ultimately used to guide the examiner's determination of parole suitability. <u>Ellis</u>, 84 F.3d at 1416.  Similarly, the new guidelines provide for the calculation of a SFS as well, which is based upon six very similar categories of risk. <u>See</u> 28 C.F.R. § 2.80(c).[3]  To the SFS, pre and post-incarceration factors are added, and this sum yields a "Base Point Score."  <u>See</u> <u>id.</u> § 2.80(c)-(f).  Under both systems, the decision-maker was allowed to deviate from the outcome suggested by the numerical indicators in "unusual circumstances."  <u>Compare</u> <u>Ellis</u>, 84 F.3d at 1416 (quoting D.C. Mun. Regs. tit. 28, § 204.22) <u>with</u> 28 C.F.R. § 2.80(n)(1).

Given the above comparison, we find no broad facial distinctions between the two sets of guidelines which would have substantially impacted Mr. Hunter's suitability for parole.  Below, we will discuss more specific distinctions in the two sets of guidelines which may have impacted Mr. Hunter's parole determinations. However, the essential characteristics of the old guidelines were preserved following the USPC's assumption of authority.  <u>Fletcher v. Reilly</u>, 433 F.3d 867, 871-72 (D.C. Cir. 2006) (noting that, while there are differences related to reparole determinations, the parole provisions contained in the new guidelines retain the rehabilitative focus of the old guidelines).  Moreover, we are not alone in reaching this conclusion; other courts have held that the new guidelines are similar (in text and import) to the old guidelines to such an extent that, when the two are compared, the Ex Post Facto

---

[3] The six categories contained in the new guidelines are: (1) "Prior convictions/adjudications (adult or juvenile)," (2) "Prior commitments of more than thirty days (adult or juvenile)," (3) "Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile)," (4) "Recent commitment free period (three years)," (5) "Probation/parole/confinement/escape status violator this time," (6) "Older offenders."  28 C.F.R. § 2.20 (Items A-F).  The only substantive difference between this list and the one contained in the old guidelines is the sixth category.

Clause is simply not implicated. See, e.g., Bennett v. LaManna, No. 3:06-499-PMD-JRM, 2007 WL 781679, at *12 (D.S.C. Mar. 13, 2007) (chronicling numerous district court decisions finding that the "new guidelines do not violate the ex post facto clause because they retain the rehabilitative and discretionary aspects of the former guidelines of the Board").[4] Mr. Hunter's case presents no reason to deviate from this conclusion.

Therefore, the Court finds no facial distinctions between the old and new guidelines which support Mr. Hunter's claims of an Ex Post Facto Clause violation. On this basis, his claim is without merit.

### 2. Application of the Guidelines

We now turn to the question of whether the application of the new guidelines at Mr. Hunter's initial hearing "yielded different results." (Doc. 19, p. 6). Once again, we must note that this question is moot - Mr. Hunter's 2009 hearing resulted in the denial of parole pursuant to the USPC's discretionary authority to depart from the result recommended by the "grid point score" reached under the old guidelines. (Doc. 101-2, Exh. J, p. 16). In short, although Mr. Hunter's grid point score warranted parole, the examiner exercised discretion to deny parole to Mr. Hunter because Mr. Hunter was considered "a more serious risk than indicated by [his] Grid Point Score."

---

[4] We do acknowledge, however, that unanimity has not been reached on this issue. Other courts have found differences between the two sets of guidelines which may give rise to Ex Post Facto Clause violations. See, e.g., Sellmon v. Reilly, 551 F. Supp. 2d 66, 88-89 (D.D.C. 2008) (holding that "plaintiffs have made a compelling showing that there are facial differences between [the two sets of guidelines] that could give rise to an ex post facto violation in individual cases . . . [and that] plaintiffs may not prevail simply by showing facial differences between the old and new policies. . . . [but rather] . . . must demonstrate that the practical effect of the new policies was to substantially increase the risk that they each would serve lengthier terms of incarceration.").

Id. The examiner stated that Mr. Hunter's offense involved "unusual cruelty" to the

victim, whom he flogged with the but of a shotgun, and then shot in the arm at point

blank range. Id. The examiner also noted that Mr. Hunter threatened to kill the

witness, his girlfriend, and since his incarceration, has displayed "poor impulse

control," and has committed numerous disciplinary infractions. Id. As explained

above, overriding discretion existed under either set of guidelines. Considering the

factors noted by the examiner, a different result very likely would not have been

reached in any case.

Once again, however, we will consider Mr. Hunter's claims in their entirety.

First, Mr. Hunter challenges the application of the new guidelines on the grounds

that the USPC used a SFS to calculate the number of months to add to his guideline

range for disciplinary infractions.[5] In a related vein, Mr. Hunter argues that a

"severity rating" was applied to his disciplinary infractions at his initial hearing,

where one would not have been applied under the old guidelines. It is true that the

old guidelines did not produce a range of months which must be served by an inmate

before the inmate was considered presumptively suitable for parole, but instead,

guided the examiner to an outcome suggesting only the granting or denial of parole.

D.C. Mun. Regs tit. 28, §§ 204.19-.22. As such, the calculation of months and the

application of the severity rating that Mr. Hunter complains of would not have taken

place under the old guidelines, and did not take place at his 2009 hearing.

---

[5] A period of 12-22 months was added to Mr. Hunter's total guideline range. (Doc. 101-2. Exh. C, p. 8). This addition was the sum of the assessment of "3 non-drug related infraction(s) [0-2 months each] . . . [and] new criminal conduct . . . [which] requires 12-16 months to be added to [the] base point score guideline range." Id.

11

However, this fact does not dictate (or even strongly suggest) the conclusion that an Ex Post Facto Clause violation occurred.  Mr. Hunter's assault, which occurred prior to the 2005 hearing, certainly would not have been ignored by an examiner applying the old guidelines.  To the contrary, the old guidelines provided for the addition of a point to the "total point score" for "negative institutional behavior." Id. § 204.18(h).[6]  The assault, combined with other disciplinary infractions committed by Mr. Hunter prior to the 2005 hearing, would have resulted in the addition of one "negative institutional behavior" point at his initial consideration, as noted in his 2009 hearing. (Doc. 101-2, Exh. I, p. 13).[7]  Thus, although the calculation of months and the severity rating would not have been relevant under the old guidelines, the assault (and the other pre-2005 disciplinary infractions) would have nonetheless militated against Mr. Hunter's suitability for parole.[8]  Moreover, these differences, by

---

[6] The term "negative institutional behavior" constitutes "serious disciplinary infractions," which the 1991 guidelines further defined to mean either:
  (1) One Class I Offense for murder, manslaughter, kidnaping, armed robbery or first degree burglary at any time during the minimum sentence (see DCMR 28-502.3, May 1987); OR
  (2) One Class I Offense as defined in DCMR 28-502.4 through 502.17 (May 1987) during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years, whichever is longer; OR
  (3) Two Class II Offenses as defined by DCMR 28-503.2 through 503.12 (May 1987) during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years, whichever is longer.
D.C. Board of Parole, Policy Guideline 2 (Dec. 16, 1991).

[7] The examiner at the 2009 hearing discussed these alleged acts of misconduct with Mr. Hunter, and Mr. Hunter agreed that he committed the offenses. (Doc. 101-2, Exh. I, p. 11).  The examiner also explained to Mr. Hunter that his disciplinary infractions would have resulted in the addition of a point at his initial hearing (as well as his rehearing). Id.

[8] Mr. Hunter also claims that, applying the old guidelines, the examiner would have only considered infractions that occurred in the year prior to the 2005 hearing.  This argument is not accurate - the policy guidelines allowed the examiner to consider Class II offenses that occurred either one year or less before the hearing, or "during the last half of the minimum sentence up to a period of three years, whichever is longer."  D.C. Board of Parole, Policy Guideline 2.  Obviously, the latter option

12

nature, "do not have ex post facto implications," because they are related specifically to Mr. Hunter's suitability for parole. <u>Wallace</u>, 516 F.3d at 355. In any case, the different methods of evaluating Mr. Hunter's assault and other disciplinary infractions did not create a significant risk of lengthening the term of his imprisonment.

Second, Mr. Hunter points out that the USPC considered his disciplinary infraction for assaulting a correctional officer as new criminal conduct under the new guidelines. Indeed, in his initial hearing, Mr. Hunter's disciplinary infraction for assaulting a correctional officer was assessed as new criminal conduct, and was given a severity rating of "Category Three," which added 12-16 months to Mr. Hunter's total guideline range. (Doc. 101-2, Exh. C, p. 8). This was an appropriate calculation under 28 C.F.R. § 2.36, if the assault was properly characterized as new criminal conduct. That section proscribes "[o]ther new criminal behavior in a prison facility," not other *judicial convictions* or *indicted offenses*, meaning that Mr. Hunter's assault of a correctional officer could properly be characterized as new criminal conduct. 28 C.F.R. § 2.36(a)(2)(ii).[9] Moreover, Mr. Hunter was "convicted" of the offense in a prison disciplinary hearing. Thus, under the new guidelines, the USPC's assessment was correct.

---

under the guideline would apply to Mr. Hunter's case. Even so, three of Mr. Hunter's four (pre-2005 hearing) infractions were committed within twelve months of the hearing date.

[9] <u>See also</u> <u>Gometz v. U.S. Parole Comm'n</u>, 294 F.3d 1256, 1261 (10th Cir. 2002) ("An ordinary assault on a correctional officer that causes no physical injury is a Category 3 offense . . . which increases the guideline range by 12-16 months [under] 28 C.F.R. § 2.36(a)(2)(ii)."); <u>Miles v. Rison</u>, 925 F.2d 1470 (9th Cir. 1991) (affirming the USPC's re-characterization of the defendant's criminal conduct as "attempted murder" under 28 C.F.R. § 2.36, when a prison discipline committee found that the defendant committed "assault"); <u>Blue v. Lacy</u>, 857 F.2d 479, 480-81 (8th Cir. 1988) (holding that the USPC was allowed to consider disputed allegations of an escapee's extraneous criminal behavior, despite the sentencing court's refusal to do so).

Finally, Mr. Hunter was not awarded any points for Superior Program Achievement ("SPA") at his 2005 hearing.  He contends that, under the old guidelines, he would have been awarded a reduction in months from his parole guideline range for his achievements.  Mr. Hunter is correct that the old guidelines did allow for the reduction of a point for "sustained achievement in the area of prison programs, industries, or work assignments."  D.C. Mun. Regs tit. 28, §§ 204.18(i).  Likewise, under the new guidelines, a prisoner may receive credit for SPA:

> The Commission shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense. Superior program achievement means program achievement that is beyond the level that the prisoner might ordinarily be expected to accomplish. Credit for program achievement may be granted regardless of whether the guidelines for disciplinary infractions have been applied for misconduct during the same period. The guidelines in this section presume that the prisoner will have ordinary program achievement.

28 C.F.R. § 2.80(e)(1).  However, the new regulations stress that the inmate's program achievement must be "superior" in order to warrant credit toward parole suitability.  An award for SPA is a determination that is entirely within the discretion of the USPC hearing examiner.  See  Smith v. Reilly, 604 F. Supp. 2d 124, 128 (D.D.C. 2009).  As such, Mr. Hunter was not "entitled" to credit for SPA under the new guidelines.

During the 2009 hearing, the examiner awarded Mr. Hunter a one point reduction for "program achievement" for his efforts prior to the 2005 hearing, and another point for his achievements between the 2005 and 2009 hearings. (Doc. 101-2, Exh. I, p. 13).  Thus, he received the credit that he requested, and was nonetheless denied parole on discretionary grounds.  The deviation from the guidelines at the

14

2009 hearing was based upon two factors that are wholly unrelated to Mr. Hunter's program achievements: (1) unusual cruelty, and (2) disciplinary problems.  (Doc. 101-2, Exh. J, p. 16).  Therefore, we find that, although this standard may have been analyzed differently under the old guidelines (as it was at the new 2009 hearing), it very likely would not have impacted Mr. Hunter's ultimate parole determination.

In sum, we are aware that the existence of discretion does not, as a matter of course, nullify a potential Ex Post Facto Clause violation.  See Garner, 529 U.S. at 253.  However, we also must abide by the Supreme Court's instructions to deny an Ex Post Facto Clause claim when an inmate's arguments establish only that the retroactive application of parole guidelines created a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes . . . [because] such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause."  Morales, 514 U.S. at 509.  Such a showing by an inmate denied parole under the new guidelines is not adequate to warrant relief.  See Garner, 529 U.S. at 251 (denying an inmate's Ex Post Facto Clause claim because the "risk of prolonging respondent's incarceration . . . is not inherent in the framework of [the amended parole rules] and it has not otherwise been demonstrated on the record"); Bennett, 2007 WL 781679, at *12 ("Although the existence of discretion is not determinative, [the petitioner] has not shown that the difference in how the Board and the Commission exercise discretion, if any, creates a

sufficient or substantial risk of prolonging his incarceration.").[10]

Mr. Hunter's claims do not satisfy the threshold required to justify relief, but rather raise only a conjectural possibility that application of the old guidelines may have changed the determination at his parole at the 2005 hearing.  Therefore, his claim under the Ex Post Facto Clause must be DENIED.

## B.    Abuse of Discretion

The second (and final) claim remaining after the Fifth Circuit's remand was that "the USPC's application of the amended parole guidelines was an abuse of discretion, an abuse of authority, capricious, prejudicial, illegal, and unwarranted." (Doc. 19, p. 7).  At this point, it must again be emphasized that there is no right to parole; rather, parole is a privilege that may or may not be granted by the USPC, in its sound discretion.  See Wallace, 516 F.3d at 355-56.  The discretion of the USPC in making parole determinations is extremely broad, and district courts should not disturb a USPC decision unless it is "'flagrant, unwarranted, or unauthorized.'"  Sheary v. U.S. Parole Comm'n, 822 F.2d 556, 559 (5th Cir. 1987) (quoting Young v. U.S. Parole Comm'n, 682 F.2d 1105, 1108 (5th Cir. 1982)).  Moreover, "[s]o long as due process requirements are observed and the Commission has acted within its statutory authority, we [courts] will not usurp the Commission's position as established in the statutory scheme enacted by Congress."  Maddox v. U.S. Parole Comm'n, 821 F.2d

---

[10] See also Thomas v. Marberry, 318 F. App'x 427, 428-29 (7th Cir. 2008) (dismissing an Ex Post Facto Clause claim because, in general, the new guidelines are not more harsh than the old guidelines, and because the factors considered by the USPC - the inmate's "minimum sentence, his disciplinary infractions, his history of violence, and his programming achievement" - would have likely resulted in the denial of parole under either set of guidelines).

997, 1000 (5th Cir. 1987).

In this case, the Court agrees with Mr. Hunter that the USPC erred when it applied the new guidelines at his 2005 hearing. The old guidelines were in effect at the time that Mr. Hunter was convicted of the offenses underlying his incarceration. Also, 28 C.F.R. § 2.80(o)(1)-(2) provides that:

> A prisoner who is eligible under the criteria of paragraph (o)(2) may receive a parole determination using the 1987 guidelines of the former District of Columbia Board of Parole (hereinafter "the 1987 guidelines").
>
> (2) A prisoner must satisfy the following criteria to obtain a determination using the 1987 guidelines:
>
> (i) The prisoner committed the offense of conviction after March 3, 1985 and before August 5, 1998;
>
> (ii) The prisoner is not incarcerated as a parole violator;
>
> (iii) The prisoner received his initial hearing after August 4, 1998; and
>
> (iv) The prisoner does not have a parole effective date, or a presumptive parole date before January 1, 2010.

Because Mr. Hunter seems to satisfy all of these requirements, the old guidelines should have been applied to his initial parole hearing in 2005.

However, the Court finds that any such error by the USPC was harmless, for a number of reasons. First, Mr. Hunter has made no evidentiary or logical showing that the USPC's original parole determination may have been significantly altered by the application of the old guidelines. In fact, our analysis here indicates that, while there would have been some differences, Mr. Hunter's particular circumstances and behavioral difficulties very likely would have generated the same result under any set of guidelines. Secondly, and more importantly, the Court ordered the USPC to correct

its error in an effort to curb or avoid any prejudice that may have been caused to Mr. Hunter. He was given a new hearing, with a recalculation of his parole suitability under the old guidelines as though they had been applied at the 2005 hearing. Therefore, he has been deprived of no procedural or substantive right under either set of guidelines.

To the extent that this argument calls into question the USPC's exercise of discretion at the 2005 hearing, the argument must fail. There is no indication that the hearing examiner misapplied the new guidelines at the 2005 hearing. Rather, the examiner's decision actually fell *within* the new guidelines. (Doc. 101-2, Exh. C, p. 6). It was, in fact, an executive reviewer who disagreed with the examiner in the 2005 report, concluding that Mr. Hunter should not have been assessed at the bottom of the guideline range because "he is a poor risk for parole and continues to be a threat to the community." ((Doc. 101-2, Exh. B, p. 5). Therefore, we find that there was no abuse of discretion, or prejudice caused to Mr. Hunter, at the 2005 hearing. Mr. Hunter's remaining two claims following the Fifth Circuit's remand are DENIED.

## III.   Other Motions

### A.   The Report and Recommendation

The Court has yet to rule on the Report and Recommendation issued by the magistrate judge on June 24, 2009 because, when it was issued, the USPC had not yet conducted a new parole hearing pursuant to the old guidelines. (Doc. 41). Rather, at that time, the USPC had merely ordered that the case be reopened and a new hearing be conducted. Nonetheless, the magistrate judge recommended that

Mr. Hunter's petition be dismissed as moot, in accord with the USPC's contention that Mr. Hunter had been "effectively afforded the relief sought." (Doc. 41, p. 2).

We agreed with this conclusion in principle, but deemed it prudent to obtain a record of the hearing prior to issuing our own ruling. Thus, the Court ordered the USPC to conduct the new parole hearing. (Doc. 52). The hearing took place on July 27, 2009, the old guidelines were applied, and Mr. Hunter was again denied parole. (Doc. 101-1, p. 3).

Because the Report and Recommendation was issued prior to Mr. Hunter's 2009 hearing, and thus was based upon the circumstances of this case as they existed before Mr. Hunter was afforded the relief that he sought, the magistrate judge's conclusions are now moot. Therefore, the Report and Recommendation is NOT ADOPTED.

### B.    Emergency Motion for Response and Decision by the Court

Mr. Hunter filed a motion requesting a response from the USPC and a decision by this Court as to his Ex Post Facto Clause and abuse of discretion claims. Insofar as this motion may be read literally, both of its requests have been satisfied. (Doc. 42). The USPC responded to Mr. Hunter's two remaining claims after his 2009 hearing was conducted. (Doc. 101). The Court has now specifically ruled upon those claims as well. As such, Mr. Hunter has been afforded the relief that he requested.

The balance of Mr. Hunter's motion is devoted to discussing the merits of his claims. Specifically, he argues that the addition of months to his parole guideline range at the 2005 and 2008 hearings was improper under the old guidelines. These

claims were addressed above.  Therefore, Mr. Hunter's Motion for Response and Decision by the Court is hereby DENIED as MOOT.

### C.    Motion for Summary Judgment

Mr. Hunter has also filed a motion for summary judgment, arguing that the order of a new hearing by the USPC constitutes an acknowledgment that it violated the Ex Post Facto Clause in Mr. Hunter's initial hearing.  (Doc. 43).[11]  Moreover, Mr. Hunter argues that he has been wrongfully imprisoned for four years, that he would have been released under the old guidelines had they been applied at his initial hearing, that the USPC should have only considered the disciplinary infractions that had occurred at the time of his initial hearing, and that the USPC should have evaluated his "progress completion certificates."  We will briefly address these issues in turn.

First, the fact that the USPC ordered a new parole hearing is not, in any sense, an admission that an Ex Post Facto Clause violation occurred.  Even if the order constituted an acknowledgment that the USPC should have applied the old guidelines at the 2005 hearing, the constitutional point is not conceded.  The fact remains that some retroactive applications of parole guidelines *are not* Ex Post Facto

---

[11]  Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

Clause violations, because they do not "create[] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'"  See Garner, 529 U.S. at 250 (quoting Morales, 514 U.S. at 509).  This, as we concluded above, is just such a case.[12]

Likewise, we have already addressed Mr. Hunter's broader claims that the application of the new guidelines at his initial hearing may have improperly lengthened the term of his imprisonment.  After a careful analysis of the law and the record before the Court, we disagree, for the reasons discussed at length above.

Finally, we note that Mr. Hunter's last two arguments are neither relevant to a motion for summary judgment, nor meritorious requests on their own.  There is simply no reason that the USPC should have been constrained to consider only Mr. Hunter's pre-2005 disciplinary infractions at the 2009 hearing.  The subsequent infractions were committed, and the USPC had both the right and the responsibility to consider Mr. Hunter's record as it appeared at the time of the hearing.  For this same reason, however, all of Mr. Hunter's "progress completion certificates" were evaluated by the examiner at the 2009 hearing.  The examiner deducted two points for "Program Achievement," one for his accomplishments at the time of his initial hearing, and another for his accomplishments after that hearing.  (Doc. 101-2, Exh. I, p. 13).  Considering Mr. Hunter's complete record, the examiner determined that parole should be denied, and the Court has before it no compelling, legally sufficient, reason to disagree.

---

[12] See Bennett, 2007 WL 781679, at *12 ("[C]ourts have routinely rejected ex post facto claims of D.C. offenders whose convictions occurred before implementation of the Commission's guidelines and became eligible for parole after their implementation.").

In all, Mr. Hunter's allegations fail to illustrate his entitlement to judgment as a matter of law, as required by Fed. R. Civ. P. 56(c). Therefore, Mr. Hunter's Motion for Summary Judgment is DENIED.

### D.   Motion Requesting a Decision as to the Ex Post Facto and Abuse of Discretion Claims

Mr. Hunter's next motion is essentially duplicative of one discussed above; it requests that this Court rule upon the two issues remaining after the Fifth Circuit remand of this case. (Doc. 45). As a result of this ruling, Mr. Hunter's desired relief has been granted. Therefore, Mr. Hunter's motion is hereby DENIED as MOOT.

### E.   Motion Requesting the Court to Order the USPC to Explain the Facial Differences Between the Old and New Guidelines

Mr. Hunter filed a brief motion on July 6, 2009, requesting the Court to order the USPC to explain the facial differences between the old and new guidelines, or alternatively, for the Court to explain those differences on its own. (Doc. 46). In compliance with the Fifth Circuit's instructions (Doc. 19, p. 6), the Court has discussed these differences in detail above. Therefore, Mr. Hunter's requested relief has been granted, and the motion must be DENIED as MOOT.

### F.   Motion for Writ of Mandamus

In the first of four motions filed by Mr. Hunter after his 2009 hearing, Mr. Hunter requests that this Court issue a writ of mandamus compelling the USPC to provide him with a new "initial hearing" under the old guidelines. (Doc. 102). He contends that (1) the USPC is putting the "cart before the horse" in simply applying the old guidelines at a new hearing; (2) the USPC misapplied the old guidelines at

22

both his 2005 and 2008 hearings, and cannot now correct those errors by applying the old guidelines at a new hearing; (3) had the old guidelines been applied at either his 2005 or 2008 hearings, parole would have been recommended, and "no countervailing factors [would have been] present to warrant a departure from the guideline recommendation of granting petitioner parole" (Doc. 102, p. 3); and (4) application of the old guidelines at his initial hearing would have afforded him a rehearing in 2006, or twelve months following his initial hearing, even if he had been denied parole.

The USPC, in conducting the 2009 hearing, has adequately addressed the first two arguments. Specifically, the hearing examiner seems to have treated Mr. Hunter's 2005 initial hearing as though it had been conducted under the old guidelines, and to have subsequently evaluated him based upon those figures. (Doc. 101-2. Exh. I, pp. 11, 13, 16). This went a step beyond simply granting Mr. Hunter a new parole hearing under the old guidelines, and instead provided for an evaluation of his parole suitability after retroactively affording him the relief that he sought in his original petition.

Furthermore, while we cannot disagree that parole may have been *recommended* under the old guidelines had they been applied at his prior hearings, we cannot agree that it certainly, or even likely, would have been *granted*. Even if Mr. Hunter was presumptively suitable for parole under the old guidelines (as the examiner concluded at the 2009 hearing), the examiner was free to deviate from that presumption as he saw fit. See D.C. Mun. Regs. tit. 28, § 204.22 ("The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set

23

forth in this chapter to grant or deny parole to a candidate.").  That is precisely what the examiner did at the 2009 hearing.  Moreover, at the 2005 hearing, a number of "countervailing factors" did exist which may have prompted the examiner to deviate from the guidelines, including (1) unusual cruelty to the victim, and (2) persistent disciplinary problems.  (Doc. 101-2, Exh. B, pp. 4-5).  These factors are strong evidence that Mr. Hunter would have been denied parole in any case.

Mr. Hunter's final argument (that he should have received a rehearing in twelve months) is incorrect.  Under the old guidelines, an inmate serving a sentence of more than five years who was denied parole was "ordinarily" granted reconsideration in twelve months.  See D.C. Mun. Regs. tit. 28, § 104.2.  However, the parole board retained discretion to deny a reconsideration in twelve months, and to set a rehearing at any point that it deemed appropriate beyond the twelve month period.  See id. § 104.11 ("[T]he Board may order a parole reconsideration date it determines to be appropriate.").[13]  Thus, we cannot find that an explicit entitlement to a parole rehearing on a particular date would have existed under any set of guidelines; rather, under the old guidelines, Mr. Hunter's rehearing may have been within twelve months, or may have been three years later as it was originally

---

[13]  See also Blair-Bey v. Quick, 151 F.3d 1036, 1047 (D.C. Cir. 1998) (explaining that the old regulations did not entitle an inmate to a rehearing within twelve months); Hall v. Henderson, 672 A.2d 1047, 1051-52, 1056 (D.C. 1996) (affirming the D.C. Parole Board's five-year set-off of an inmate's parole rehearing, and noting that one factor considered by the Board in extending the rehearing date was whether "[t]here has been repeated or extremely serious negative institutional behavior").  Mr. Hunter's numerous disciplinary infractions make it very likely that the Board would have extended his rehearing date beyond the presumptive twelve month period.

scheduled.[14]

On each of the grounds described above, Mr. Hunter's motion is DENIED.

### G.    Motion for Discovery

Mr. Hunter next moves for discovery of all material contained "in [his] parole file, information that was use[d] at [his initial parole hearing in 2005, rehearing in 2008, and new hearing on July 27, 2009." (Doc. 103). However, this ruling is dispositive of Mr. Hunter's claims in the instant matter. Thus, further discovery of materials relevant to the claim is, at this point, moot.

Therefore, Mr. Hunter's Motion for Discovery is DENIED.

### H.    Petition for Writ of Mandamus (Doc. 104)

Mr. Hunter's next motion requests the Court to demand from the USPC an explanation of how the application of the old guidelines at his initial hearing did not adversely impact him in the subsequent parole determinations, and why the USPC did not address this issue at the 2009 hearing. (Doc. 104).[15] He argues that, at the 2009 hearing, the USPC was supposed to make a new determination as to his initial hearing in 2005.

These arguments, however, rest upon several unfounded assumptions. First, the 2009 hearing was not intended to be a "recreation" of Mr. Hunter's initial hearing

---

[14] Mr. Hunter was ultimately granted a new parole hearing well before the July 2011 date set following his 2008 hearing. The Court's order to the USPC to conduct a hearing before October 5, 2009 (Doc. 52), and the USPC's compliance with that order, effectively resolved any concerns as to the timing of Mr. Hunter's parole hearing.

[15] Mr. Hunter also reasserts that he would have been entitled to a rehearing in twelve months, and that the alleged Ex Post Facto Clause violations cannot now be corrected simply by granting him a new hearing under the old guidelines. The latter two claims have been addressed above.

in 2005.  Rather, the Court ordered the USPC to conduct a "new hearing" which accomplished two purposes: to "(1) track[] the language of the Fifth Circuit opinion as to how the guidelines were applied in Petitioner's initial hearing and in the new hearing; and (2) explain[] the result of the new hearing and its effect upon Petitioner's sentence under the old and amended guidelines." (Doc. 52, p. 2).  The USPC's response adequately complied with the Court's order by (1) providing us with a record of the 2005 hearing, in which the application of the new guidelines is explained, and (2) providing us with a record of the 2009 hearing, in which the application of the old guidelines to both the 2005 and 2009 hearings is explained, and the examiner's thoughts as to what the likely results of the 2005 and 2008 hearings would have been under the old guidelines. (Doc. 101-2, Exhs. B, I, pp. 2-8, 10-17).[16] Thus, the USPC has explained the impact of applying the new guidelines at the 2005 hearing, applied the old guidelines to that hearing, and reevaluated Mr. Hunter based upon the old guidelines.  We find no deficiencies in these procedures.

Moreover, contrary to Mr. Hunter's claims, there were a number of reasons to deviate from the guidelines recommendations (and thus to deny him parole) at the 2005 hearing, even had the old guidelines been applied.  The two principal factors, as we have mentioned at several points in this ruling, are unusual cruelty to the victim of Mr. Hunter's offense, and persistent disciplinary problems.  Both were sufficient to warrant a deviation from the old guidelines.  Thus, although Mr. Hunter's grid point

---

[16] The examiner himself indicated that, although Mr. Hunter's grid point score would have warranted parole at the 2005 and 2008 hearings, the USPC would have likely deviated from the guidelines and denied parole at both hearings. (Doc. 101-2, Exh. I, p. 14).

score would have made him presumptively suitable for parole, we cannot now presume that Mr. Hunter would have been granted parole at any point.

Therefore, Mr. Hunter's Petition for Writ of Mandamus is DENIED.

## I.      Motion for a Copy of the USPC Report

The last motion pending in this matter involves a request by Mr. Hunter for a report from the USPC which, in essence, exemplifies the USPC's compliance with this Court's October 5, 2009 order.  (Doc. 106).  As we explained above, the USPC has sufficiently complied with our order.  A copy of the reports submitted by the USPC of the 2005 and 2009 hearings was submitted to this Court, and was, judging by the Certificate of Service, provided to Mr. Hunter as well.

Therefore, Mr. Hunter's motion is DENIED.

## IV.   Conclusion

After a careful review of the record, the Court finds that no violation of the Ex Post Facto Clause or abuse of discretion on the part of the USPC has occurred.  In the absence of such violations, we are constrained to defer to the judgment of the USPC as to Mr. Hunter's suitability for parole.

SIGNED on this 1½ day of November, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE